# Application of the Brady Act's Criminal Penalties to State or Local Law Enforcement Officers

The criminal penalties contained in the Brady Handgun Violence Protection Act do not apply to state or local law enforcement officers in the performance of their duties under the Brady Act Accordingly, the United States lacks the authority to prosecute state or local officials for violations of the Brady Act.

March 16, 1994

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum presents our analysis of the application of the criminal penalties contained in the recently enacted Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993) ("the Act"). Specifically, we address the question whether the Act's criminal penalties apply to state or local law enforcement officers. We conclude that the Act's criminal penalties do not apply to such officials in performance of their duties under the Act.

Section 102(c) of the Act amends 18 U.S.C. § 924(a) in relevant part by adding the following new paragraph:

> (5) Whoever knowingly violates subsection (s) or (t) of section 922 [the Act's interim and permanent systems for background checks] shall be fined not more than $1,000, imprisoned for not more than 1 year, or both.

107 Stat. at 1541.

Three provisions of the Act could be interpreted as placing obligations on a "chief law enforcement officer" ("CLEO"):[1] 18 U.S.C. § 922(s)(2),[*] which provides that CLEOs "shall make a reasonable effort to ascertain within 5 business days" whether a handgun transfer would be illegal; 18 U.S.C. § 922(s)(6)(B), which provides that CLEOs shall destroy information received pursuant to the Act; and 18 U.S.C. § 922(s)(6)(C), which provides that if a CLEO determines that a transfer would be illegal, he or she shall provide reasons for such determination within 20 days.

The Act specifically exempts CLEOs from liability for damages in 18 U.S.C. § 922(s)(7), which provides that

---

[1] 18 U.S.C. § 922(s)(8) provides that, "[f]or purposes of this subsection, the term 'chief law enforcement officer' means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual."

[*] Editor's Note: In *Printz v United States*, 521 U S. 898, 933-34 (1997), the Supreme Court struck down 18 U.S C § 922(s)(2), together with 18 U S C. § 922(s)(1)(A)(i)(III) & (IV), as unconstitutional

A chief law enforcement officer or other person responsible for providing criminal history background information pursuant to this subsection shall not be liable in an action at law for damages—

(A) for failure to prevent the sale or transfer of a handgun to a person whose receipt or possession of the handgun is unlawful under this section; or

(B) for preventing such a sale or transfer to a person who may lawfully receive or possess a handgun.

The Act does not, however, specifically exempt CLEOs from the criminal penalties of 18 U.S.C. § 924(a)(5). Consequently, the question arises whether a CLEO's failure to comply with the Act would subject him or her to the criminal penalties of 18 U.S.C. § 924(a)(5).

The history of the Act indicates that Congress did not envision its criminal sanctions applying to CLEOs. The 1991 version of the Brady Bill, which was passed by the House but never enacted into law, contained the criminal penalty provision from the public law quoted above but did not include the principal obligation now imposed on CLEOs — that CLEOs shall make a reasonable effort to ascertain within five days whether a transfer would be illegal. When the bill's proponents added the "reasonable effort" language of 18 U.S.C. § 922(s)(2) in 1992, no member of Congress even intimated that the modification to § 922(s)(2) would enlarge, or in any way affect, the application of the bill's criminal sanctions. In fact, there was never any suggestion that the criminal sanction applied to CLEOs. Such congressional silence strongly supports the conclusion that Congress did not intend to apply 18 U.S.C. § 924(a)(5) to CLEOs.

This reasoning is reinforced by the great solicitude paid to law enforcement officials in other provisions of the Act. It would be incongruous to insulate the CLEO against liability for damages and even for attorneys' fees for providing erroneous information that prevents a sale and then turn around and subject him or her to criminal fine or imprisonment for failure to perform ministerial acts. Our conclusion is further supported by the impracticality, if not impossibility, of prosecuting a chief law enforcement officer for failing to make "a reasonable effort." The use of the term "reasonable effort" reflects Congress' apparent intent to vest discretion in CLEOs by providing a flexible statutory requirement. This elasticity, though common in civil statutes, is unusual in criminal laws because it does not clearly define a punishable act. It would be difficult to prosecute a CLEO for failing to make "a reasonable effort," and such prosecution could be subject to a Fifth Amendment due process challenge. In light of the fact that applying criminal penalties to the "reasonable effort" requirement would be both unusual and arguably unconstitutional, we find it difficult to believe that Congress intended the "reasonable effort" standard to be criminally enforceable.

Established principles of statutory construction further support our conclusion that the criminal penalty provision does not extend to law enforcement officials, but only to gun dealers and other nongovernmental persons. The Supreme Court has repeatedly cautioned that courts should not lightly construe federal statutes as intended to intrude into state governmental processes or to change the traditional relationship between federal and state institutions. Where a statute arguably

> would upset the usual constitutional balance of federal and state powers . . . it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides this balance. We explained recently: [I]f Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.

*Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (citations and internal quotation marks omitted). A federal statute imposing criminal penalties on a state law enforcement official because, for example, he or she destroyed a weapons purchaser's statement a few days late or failed to "make a reasonable effort" to research the information available on a potential purchaser certainly alters "the usual constitutional balance between" the states and the federal government. We are unaware of any other instance where Congress has assigned specific tasks to state or local officials and then deemed a failure to perform those tasks to be a crime. Moreover it would have the effect of placing the operational and record-keeping activities of state and local law enforcement agencies under the supervision and control of federal prosecutors and the federal criminal law. Because there is no explicit reference to chief law enforcement officers in the penalty provision, it does not contain the "unmistakably clear" language that would be necessary for a court properly to construe the provision to have such a purpose.

To include chief law enforcement officers within the ambit of the criminal penalty provision would be contrary to Congress' intent as determined according to rules of statutory construction and the relevant legislative history. Furthermore, the absence of a definitive standard inherent in the term "a reasonable effort" would very likely pose an insurmountable hurdle to successful prosecution or raise a substantial due process question. Accordingly, we conclude that 18 U.S.C. § 924(a)(5) does not apply to state officials and that the United States therefore lacks the authority to prosecute such officials for violations of the Act.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*